**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **KENDALL LAMONTE SMITH** | § | |
| | § | |
| **V.** | § | **A-20-CV-1156-LY** |
| | § | |
| **ZACHARY WOODS and** | § | |
| **ARIEL CRUMES** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges.

Before the Court are Plaintiff's amended complaint brought pursuant to 42 U.S.C. § 1983, Defendants' Motion to Dismiss, which the Court converted to a motion for summary judgment, and the parties' summary-judgment evidence.  Plaintiff, proceeding *pro se*, has been granted leave to proceed *in forma pauperis*.

1

## I. BACKGROUND

At the time Plaintiff filed his original complaint, he was confined in the Travis County Correctional Complex.  Subsequently, Plaintiff was convicted of Assault of Family or Household Member Impeding Breath/Circulation committed on August 20, 2020; Assault on a Peace Officer committed on August 20, 2020; and Aggravated Assault with a Deadly Weapon committed on August 10, 2020.  After being convicted and sentenced, Plaintiff was transferred to the Texas Department of Criminal Justice - Correctional Institutions Division.

Plaintiff alleges Austin Police Officers Zachary Woods and Ariel Crumes used excessive force against him for no reason on August 9, 2020.  Plaintiff complains he suffered an injury to his back and neck.  Plaintiff seeks damages in the amount of $1.5 million.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move to dismiss Plaintiff's amended complaint.  The Court construed the motion to dismiss as a motion for summary judgment and provided the parties the opportunity to file summary-judgment evidence.

Defendants assert their entitlement to qualified immunity and provide the Court with video of the incident in question.  Defendants responded to an urgent domestic disturbance service call from Amy Perkins on August 9, 2020, where she complained Plaintiff hit her and was threatening to assault her again.  They explain Plaintiff was noncompliant with verbal commands and resisted and pulled away from Defendant Woods.  Defendants assert Plaintiff refused to comply as Defendant Woods attempted to talk with him and keep him separated from Perkins.  Defendants contend they reasonably believed Plaintiff posed an imminent threat of serious bodily harm to Defendants and

2

others near the scene.  They maintain they acted objectively reasonable under the circumstances as they restrained Plaintiff and kept him from physically assaulting Perkins or anyone else.

### III. PLAINTIFF'S RESPONSE

In his response, Plaintiff asserts Officer Woods took it upon himself to remove Plaintiff and Officer Woods away from everybody.  Plaintiff initially asserts he complied but later stated Officer Woods did not hear what Plaintiff said and the officer took it as a negative.  Plaintiff claims Officer Woods became physical and forcefully grabbed Plaintiff, which Plaintiff believed was uncalled for. Plaintiff admits, when Officer Woods grasped him, Plaintiff told him he had not done anything. When Officer Woods grasped Plaintiff again, Plaintiff states he asked the officer why he was putting hands on him.  Rather than giving a verbal response, Officer Woods allegedly forced Plaintiff to the ground.  Plaintiff believes the defendants profiled him after reading his criminal history in the police database.  Plaintiff appears to contend Officer Woods should have come to the scene with a clear and open mind instead of reviewing Plaintiff's criminal background.  In addition, Plaintiff appears to contend he had a First Amendment right to shout across the street at the 911 caller.

### IV. ANALYSIS

A.    Summary Judgment Standard

"Summary judgment must be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Trammell v. Fruge*, 868 F.3d 332, 338 (5th Cir. 2017) (quoting FED. R. CIV. P. 56(a)).  The court views the facts in the light most favorable to the non-moving party and draw all reasonable inferences in the non-movant's favor.  *Hanks* v. *Rogers*, 853 F.3d 738, 743 (5th Cir. 2017) (quoting *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009)).

"A qualified immunity defense alters the usual summary judgment burden of proof. Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id.* at 744 (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).

B.    Qualified Immunity

"Qualified immunity shields public officials sued in their individual capacities from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kokesh v. Curlee*, 14 F.4th 382, 391 (5th Cir. 2021) (cleaned up). "The qualified immunity inquiry includes two parts. In the first we ask whether the officer's alleged conduct has violated a federal right; in the second we ask whether the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (*en banc*). The court need not decide the first question before the second, and it may decide the case solely on the basis that the right was not clearly established. *Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009). The Court address each question in turn.

C.    Constitutional Violation

Plaintiff's claim is for excessive force under the Fourth Amendment. "To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Trammell*, 868 F.3d at 340 (quoting *Deville*, 567 F.3d at 167). The Fifth Circuit has explained, "[a]t bottom, 'the touchstone of our inquiry is simply the reasonableness of the force employed.'" *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (quoting

4

*Buehler v. Dear*, 27 F.4th 969, 981 (5th Cir. 2022)). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville*, 567 F.3d at 167 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The court examines each officer's actions independently to determine whether he or she is entitled to qualified immunity. *Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007).

Plaintiff alleges he injured his neck and back during the takedown of him on August 9, 2022. There is very little summary-judgment evidence relating to Plaintiff's injury. Although Plaintiff was taken to the hospital in an ambulance, the transport of Plaintiff appeared necessary due to the amount of sedatives EMS injected in Plaintiff to calm him down. In addition, there is evidence that transporting Plaintiff to one hospital and directing the 911 caller to a different hospital was designed to diffuse the situation where each party maintained the other party was the aggressor. In viewing Plaintiff's allegations and the summary-judgment evidence submitted by the parties, the Court is of the opinion Plaintiff shows "some injury." However, the limited extent of Plaintiff's injuries tend to support a conclusion that the officers acted reasonably.

The Court next considers the amount of force used and the reasonableness of resorting to such force. Courts generally consider these factors together, as "officers must assess not only the need for force, but also 'the relationship between the need and the amount of force used.'" *Deville*, 567 F.3d at 167 (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)). In *Graham v. Connor*, the Supreme Court enumerated three non-exclusive considerations for courts to examine when analyzing the reasonableness of the force used, including "the severity of the crime at issue,

whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396.

Plaintiff and Perkins each accused the other of domestic abuse.  Neither party was arrested on August 9, 2022.  This weighs against the officers.

The Court next considers whether Plaintiff posed an immediate threat to the safety of the officers or others.  When Crumes arrived, she heard Perkins yelling at Plaintiff and Plaintiff stating, "nah, you put your hands on me."  Perkins accused him of burglarizing her house.  Plaintiff denied the burglary.  Crumes continually asked Plaintiff for his name.  While he ignored Crumes, he continued to shout at Perkins and his cousin shouted at the police.  Plaintiff finally provided Crumes his name and claimed Perkins hit his face and scratched him.  When asked if he had a complaint of pain, he stated, "No, I can take a hit."  Woods subsequently arrived on scene and talked to Plaintiff while Crumes went to Perkins.

While en route to the scene, Woods reviewed Plaintiff's criminal history that included previous arrests for assault and family disturbance with violence, including the following:

arrested for possession of controlled sub/narcotic May 28, 2020

involved family disturbance October 10, 2019

suspect assault info (family violence) October 1, 2019

arrested robbery by assault March 19, 2018

arrested possession of controlled sub/narcotic January 6, 2018

arrested public intoxication August 22, 2016

arrested family disturbance July 10, 2016

arrested possession controlled sub/narcotic January 15, 2016

6

arrested request to apprehend September 15, 2015

arrested possession controlled sub/narcotic August 26, 2015

arrested assault on public servant October 9, 2014

committed assault with injury February 19, 2014

suspect emergency protective order November 8, 2013

arrested assault by contact October 1, 2013

Woods stood by Plaintiff and engaged in conversation with him.  Plaintiff's cousin and aunt were also at the scene shouting at officers and Perkins, antagonizing one another.  Other people arrived at the scene and joined in on the shouting.  Police officers were outnumbered.  Plaintiff took a few steps closer to the groups of people.  Woods asserts he attempted to control the scene and make it safer by separating the involved parties and their families.  Woods attempted to create some distance between Plaintiff, Perkins, and her family.  Woods asked Plaintiff to come stand with him. Plaintiff turned away and muttered something.  Woods walked closer to Plaintiff, touched his arm, and asked Plaintiff to come stand with him.  Woods grasped Plaintiff's other arm to turn him away and guide him away from the group.  Woods repeated his request to come stand with him.  Plaintiff did not comply.  Plaintiff pulled his arm away, told Woods he had not done anything, "you ain't got to put your hands on me," and "hell no, man I ain't did nothing."  Woods feared Plaintiff would attack, and he executed a take down by taking one of Plaintiff's legs and driving him forward. Woods explained taking Plaintiff to the ground allowed Woods to use the ground and his body weight to try to control Plaintiff and limited his mobility and ability to flee the scene.  Plaintiff continued to resist on the ground despite multiple commands to stop resisting, put your hands behind your back, and go to your stomach.  Plaintiff repeated he had not done anything and continued to

reply "hell no."  Plaintiff's family crowded around the struggle while his aunt repeated to Plaintiff to "calm down."

Crumes ran to assist Woods.  She yelled at Plaintiff to put his hands behind his back.  Plaintiff failed to comply.  Crumes struggled to get Plaintiff to comply and felt Plaintiff attempt to stand up.  She applied a couple closed fist strikes to Plaintiff's left temple.  Plaintiff yelled at Crumes, who moved to the side of Plaintiff and did a knee strike to his left side of his rib cage.  Crumes felt Plaintiff's force lessen and she used her body weight on his calves and legs.

Plaintiff resisted the entire process including when officers attempted to walk Plaintiff to a patrol car.  Plaintiff insisted he did not need to go to the car, because he had done nothing.  Plaintiff was informed he was being detained for the investigation and Plaintiff repeated, "hell no."  Plaintiff insisted he did not need to get in the car and informed the officers they were in his yard.  Officers gave up the struggle to place Plaintiff in a patrol car after Plaintiff propelled himself across the backseat and out the opposite door.  EMS arrived, so they placed him on a stretcher.  Woods refused to remove Plaintiff's handcuffs upon EMS's request and Plaintiff informed, "You're lucky I didn't knock your bitch ass out officers for putting your hands on me."

When viewed from the perspective of a reasonable officer on the scene of this rapidly evolving incidence, it was reasonable for Woods and Crumes to believe that Plaintiff posed an immediate threat to the safety of the officers or others.  Woods and Crumes responded to an urgent domestic disturbance service call from Perkins on August 9, 2020, where she complained Plaintiff had already hit her and was threatening to assault her again.  Plaintiff had a history of assaultive behavior and acted aggressively when grasped by Woods who attempted to create space between

Plaintiff, the victim, and the gathering crowd. Plaintiff struggled with officers even after being taken to the ground, and it took several officers to restrain him. These factors weigh against the plaintiff.

The Court concludes the actions of Woods and Crumes were not so objectively unreasonable as to violate Plaintiff's constitutional rights. The use of force demonstrated on the video evidence involved a brief takedown and the use of force necessary to restrain Plaintiff until he was handcuffed. He was promptly brought to his feet, and despite his resistance to be taken to the patrol car, additional force was not used.

In addition, even if Woods and Crumes violated Plaintiff's constitutional rights, such a right was not clearly established at the time of the alleged constitutional violation. To determine that a right is clearly established the court "must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (*en banc*) (cleaned up). "Although this does not mean that 'a case directly on point' is required, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Trammell*, 868 F.3d at 339 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The precedent must also be at "a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015).

The Fifth Circuit recently reviewed several cases alleging excessive force during an arrest. *See Solis v. Serrett*, 31 F.4th  975, 986-87 (5th Cir. 2022). That court considered *Tucker v. City of Shreveport*, which dealt with a plaintiff who was pulled over for a broken brake light. 998 F.3d 165 (5th Cir. 2021). An officer asked Tucker to come to the back of the car, where the officer searched him and found a small knife. *See Tucker v. City of Shreveport*, No. 17-1485, 2019 WL 961993, at

*1 (W.D. La. Feb. 27, 2019). Although the plaintiff was agitated, he was compliant. *Id.* He was never told that he was under arrest. *Id.* The plaintiff denied that he ever pulled away from the officers, but they claimed that he jerked his arm when they tried to arrest him, and the video evidence showed his arm moving. *Tucker*, 998 F.3d at 178. The officers performed a takedown and brought the plaintiff to the ground. *Id.* at 175. He sued, and the district court denied qualified immunity to the officers. After an exhaustive review of the evidence and an emphasis on viewing the events from the point of view of the officers at the time, the Fifth Circuit reversed, finding no constitutional violation and that the law was not clearly established. *Id.* at 176–81. If there is no constitutional violation where the officers perform a takedown on a mostly compliant plaintiff who was never told he was under arrest and whose form of active resistance was jerking his arm away, then there is no "clearly established" violation here where Plaintiff is seen on video pulling his arm away, squaring off with a police officer, and resisting the entire takedown, handcuffing, and walking to the patrol car.

Although *Tucker* was decided after the incident at issue here, it demonstrates that the constitutional issue at question here was far from "beyond debate." *Trammell*, 868 F.3d at 339.

## IV.  RECOMMENDATION

The undersigned recommends that the District Court **GRANT** Defendants' Motion to Dismiss, which was converted to a motion for summary judgment, and to issue a take nothing judgment.

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

being made.  The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153 (1985);  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1428-29 (5th Cir. *en banc*, 1996).

**SIGNED** on July 5, 2022.

_____

MARK  LANE
UNITED STATES MAGISTRATE JUDGE

11